**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FELIX RODRIGUEZ, individually, and on behalf of all others similarly situated, | |
| | Case No. 25-cv-1019 |
| Plaintiff, | |
| | Judge Mary M. Rowland |
| v. | |
| PROGRESSIVE TREATMENT SOLUTIONS, LLC, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Felix Rodriguez ("Rodriguez"), individually and on behalf of others similarly situated, brings this six-count action against Defendants Progressive Treatment Solutions, LLC, NMI Management Group, LLC, and PTS Corp. (collectively, "Defendants") for unlawfully marketing and selling certain cannabis-infused products ("CIPs"). Defendants have moved to dismiss [39] all of Rodriguez's claims.

For the reasons stated herein, Defendants' Motion to Dismiss [39] is granted.

### I. Background

The following factual allegations taken from the operative complaint [36] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Defendants are a group of interrelated companies that process, manufacture, and sell cannabis products in Illinois. [36] ¶¶ 3, 4, 18–32, 35. Among Defendants' offerings

is a cannabis oil known as Rick Simpson Oil ("RSO"). *Id.* ¶ 2. RSO is made by soaking cannabis flowers in a solvent, such as ethanol or alcohol, leaving behind a sticky and thick substance that is high in tetrahydrocannabinol ("THC") and other cannabinoids. *Id.* Defendants sell their RSO house brand under the names "The Antidote" and "Mozey" (the "RSO Products"). *Id.* ¶ 5.

The production, consumption, and sale of cannabis is heavily regulated in Illinois and is subject to the requirements of, among other things, the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq.* ("CRTA"). *Id.* ¶¶ 48–56. As it pertains to this case, the CRTA contains two general categories of cannabis products that are permitted to be manufactured, packaged, and sold to retail consumers in Illinois: (1) cannabis concentrates, and (2) CIPs. *Id.* ¶ 56. The CRTA defines those categories as follows:

> "Cannabis concentrate" means a product derived from cannabis that is produced by extracting cannabinoids, including tetrahydrocannabinol (THC), from the plant through the use of propylene glycol, glycerin, butter, olive oil, or other typical  cooking fats; water, ice, or dry ice; or butane, propane, CO2, ethanol, or isopropanol and with the intended use of smoking or making a cannabis-infused product

> "Cannabis-infused product" means a beverage, food, oil, ointment, tincture, topical formulation, or another product containing cannabis or cannabis concentrate that is not intended to be smoked

*Id.* ¶ 57. (citing 410 ILCS 705/1-10).

The distinction between cannabis concentrates and CIPs is significant from a regulatory perspective. For instance, an Illinois state resident over the age of 21 is permitted to cumulatively possess up to 500 milligrams (*i.e.*, 0.5 grams) of THC contained in a CIP, but up to 5 grams of cannabis concentrate. *Id.* ¶ 71 (citing 410

ILCS 705/10-10(2)). Additionally, the maximum THC limit for one package of a CIP is no more than 100 milligrams. *Id*. ¶ 66 (citing 410 ILCS 705/55-21(k)). By comparison, cannabis concentrates are not subject to any per package limits. *Id*. ¶ 11.

On or around July 2021 and August 2023, Rodriguez purchased RSO Products from various Ascend dispensaries in Illinois. *Id*. ¶¶ 117–119. Rodriguez contends that, under the CRTA, the RSO Products he purchased were CIPs, not cannabis concentrates, and yet were improperly marketed as cannabis concentrates by Defendants. *Id*. ¶¶ 10, 120, 127, 128, 130. Rodriguez alleges that he relied on Defendants' representations when deciding to purchase the RSO Products. *Id*. ¶¶ 132–133. Rodriguez alleges he did not know the RSO Products he purchased were actually CIPs that were unsafe and failed to comply with Illinois law and that he would not have purchased the products had he known so. *Id*. ¶¶ 134–137.

On December 2, 2024, Rodriguez filed this instant action, on behalf of himself and others similarly situated, against Defendants in the Circuit Court of Cook County, Illinois. [1-1]. Rodriguez asserted that Defendants' misrepresentations constituted a violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1 *et seq*. (Count I) and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*. (Count II), common law fraud (Count III), fraudulent concealment (Count IV), and unjust enrichment (Count V). *Id*. ¶¶ 102–191.

On January 29, 2025, Defendants removed Rodriguez's action to this Court, contending that diversity jurisdiction over Rodriguez's claims exists pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). [1].

On August 7, 2025, Rodriguez filed his operative Second Amended Complaint. [36]. The Second Amended Complaint alleges that Defendants' misrepresentations constituted a violation of the ICFA (Count I), common law fraud (Count II), fraudulent concealment (Count III), a breach of express warranty (Count IV), a breach of implied warranty (Count V), and unjust enrichment (Count VI). *Id*. ¶¶ 147–275. The Second Amended Complaint no longer includes a UDTPA claim. *Id*.

On August 29, 2025, Defendants moved to dismiss all of Rodriguez's claims. [39].

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id*. (quoting *Bilek v. Fed. Ins.*

4

*Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

When a complaint alleges fraud, the heightened Rule 9(b) standard applies, requiring the pleading to "'state with particularity the circumstances constituting fraud.'" *Camasta*, 761 F.3d at 737 (quoting Fed. R. Civ. P. 9(b)). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading ordinarily requires describing the who, what, when, where, and how of the fraud." *Id.* (internal citation and quotations omitted). Common-law fraud claims "must be pleaded with the detail required under Rule 9(b)'s heightened standard." *Newman v. Metro. Life Ins.* Co., 885 F.3d 992, 998 (7th Cir. 2018). Rule 9(b) also applies to claims of deceptive conduct brought under the ICFA and fraudulent concealment. *Camasta*, 761 F.3d at 737 (ICFA); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (fraudulent concealment).

5

Additionally, where a defendant asserts a facial challenge to subject matter jurisdiction and moves to dismiss for lack of standing pursuant to Rule 12(b)(1), the Court applies *Twombly-Iqbal*'s "'plausibility' requirement." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). In assessing whether a plaintiff has established standing, the Court accepts as true "all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 381–82 (7th Cir. 2020).

### III. Analysis

Defendants bring a facial standing challenge under Rule 12(b)(1) and a failure to state a claim challenge under Rule 12(b)(6). The Court addresses each in turn.

#### A. Standing

##### i. Standing for Himself

Defendants start by arguing that Rodriguez lacks Article III standing to assert his claims. [39] at 5–8. To satisfy Article III standing requirements, a plaintiff must show that (1) he suffered an injury in fact, (2) the injury was likely caused by the defendant, and (3) the injury would likely be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). At the pleading stage, the plaintiff bears the burden of establishing these elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Defendants focus on the first prong. They contend that Rodriguez fails to allege any adverse health consequences from using or economic injury from buying the RSO Products he purchased and therefore has not suffered an "injury in fact." [39] at 5–7.

Rodriguez contests this, arguing that he alleges a financial injury in that "he would not have purchased the RSO Products had he known they were unsafe, not what they were represented to be, were improperly labeled, and instead were a worthless alternative to illicit cannabis." [41] at 3 (citing [36] ¶¶ 124, 126, 134, 135, 137, 191, 199, 205, 220, 236, 242, 258, 264).

For the reasons given in *In re Aqua Dots Products Liability Litigation* 654 F.3d 748 (7th Cir.2011), Rodriguez's allegations are sufficient to confer Article III standing. In *Aqua Dots*, the plaintiffs sued the manufacturer and distributors of a children's toy containing beads that, when swallowed, metabolized into gamma-hydroxybutyric acid. *Id.* at 749. Children who swallowed a large quantity of the beads became sick. *Id.* at 750. The plaintiffs were parents of children who did not suffer any physical injury from the beads. *Id.* Despite this, the Seventh Circuit found standing. As the *Aqua Dots* court explained: the fact that the plaintiffs "did not suffer physical injury, [did] not mean that they were uninjured. The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing." *Id.* at 751.

The same logic applies here. Rodriguez alleges that he would not have purchased the RSO Products had he known they were unsafe and improperly labeled. This is sufficient to establish Article III standing.

Defendants attempt to differentiate *Aqua Dots* based on the Seventh Circuit's later ruling in *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525 (7th Cir. 2024). [42] at 3. But the Court agrees with Rodriguez: *Abbott* is

distinguishable. In *Abbott*, the plaintiffs claimed an economic injury in that they "would not have paid the purchase price for the products had they known the products were at substantial risk of being contaminated with ... harmful bacteria at the time of purchase." 97 F.4th at 529. The critical issue, though, was that the plaintiffs' economic injury was "hypothetical or conjectural" as there was no evidence the products they purchased were actually contaminated. *Id*. Given these facts, the Seventh Court distinguished the situation from *Aqua Dots*, where there was a "universal defect inherent in a product" as opposed to just a "potential risk of harm or defect." *Id*. at 530.

Here, Rodriguez alleges that the RSO Products he purchased suffered not from a potential defect, but an actual and universal one: the RSO Products are actually CIPs that exceed safety levels. *See e.g.*, [36] ¶¶ 3, 10, 12. As such, *Aqua Dots*, not *Abbott*, applies.

Defendants nevertheless argue that this Court's previous decision in *Tepper v. The Quaker Oats Company,* 2025 WL 843710 (N.D. Ill. Mar. 18, 2025) "distinguished *Aqua Dots* on the grounds that it involved products with ingredients that were harmful 'at any level.'" [42] at 3. Defendants misunderstand *Tepper*. For one, the portion of *Tepper* cited by Defendants relates only to the district court's decision in *Abbott*, not the Seventh Circuit's decision, and is therefore not necessarily appropriate authority. But more importantly, *Tepper* involved a situation where the "level of chlormequat" in certain oat-based foods was "*significantly below* the tolerance level set by the EPA" and the allegations could not establish that levels of chlormequat below the EPA's

guidelines were harmful. 2025 WL 843710, at *4 (emphasis in the original). Had the *Tepper* plaintiffs sufficiently alleged that "any level" of chlormequat was unsafe (*i.e.*, shown that chlormequat levels below the EPA's tolerance levels could be harmful), the situation would have been different. *Id.* By contrast, Rodriguez alleges here that Defendants sold the RSO Products in "single packages that universally *exceed* the safe THC limit imposed on individual packages of CIPs limit imposed on individual packages of CIPs." [36] ¶ 12 (emphasis added). In other words, Rodriguez pleads the exact opposite situation as *Tepper*. Defendants' invocation of *Tepper's* "any level" language is thus misplaced.

Defendants lastly attempt to distinguish *Aqua Dots* by pointing to *Watt v. Trulieve*, No. CV-25-00962-PHX-SPL, slip op. (D. Ariz. Aug. 28, 2025). [42] at 2. In *Watt*, the District Court of Arizona dismissed allegations similar to those alleged by Rodriguez for lack of standing. [39-1]. The standing analysis performed by the *Watt* court relied primarily on the Ninth Circuit's holding in *McGee v. S-L Snacks National*, 982 F.3d 700 (9th Cir. 2020). *McGee*, though, is not binding on this Court. And upon review, the Court has not identified (nor have Defendants pointed to) any Seventh Circuit authority accepting the specific premise of *McGee*.[1] The Court thus declines to apply *Watt* here.

For the reasons above, the Court rejects Defendants' argument that Rodriguez lacks Article III standing to assert his claims.

---

[1]Though *Abbott* cites to *McGee*, it doesn't go as far as to accept *McGee's* proposition that a specific misrepresentation or omission needs to be relied upon to confer Article III standing.

### ii.    Standing for Products Not Purchased

As an alternative, Defendants contend that even if Rodriguez has pled an injury in fact for Article III purposes, he still lacks standing to pursue claims for RSO Products that he did not purchase. [39] at 7–8.

There is no controlling authority in this district on whether plaintiffs have standing to sue for products they did not purchase in a putative class action. *Raya v. Mead Johnson Nutrition Co.*, 758 F. Supp. 3d 819, 829 (N.D. Ill. 2024). Some courts treat the issue as relating to the named plaintiff's qualifications to be a class representative and delay resolution until class certification. *Id.* (citing *Daly v. FitLife Brands, Inc.*, 2023 WL 6388112, at *6 (N.D. Ill. Sept. 29, 2023)). Others consider whether the unpurchased products are "substantially similar" to purchased products and find standing when they are. *Id.* (citing *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017). And others "categorically hold that class action plaintiffs never have standing with respect to products they have not purchased." *Id.* (quoting *Gibson v. Albertsons Companies, Inc.*, No. 22 CV 642, 754 F.Supp.3d 793, 803 (N.D. Ill. Oct. 17, 2024)).

This Court has previously adopted the "substantially similar" approach to the issue. *See Acosta-Aguayo v. Walgreen Co.*, No. 22-CV-00177, 2023 WL 2333300 (N.D. Ill. Mar. 2, 2023); *Calderon v. Procter & Gamble Co.*, 674 F. Supp. 3d 483 (N.D. Ill. 2023); *Bonahoom v. Staples, Inc.*, No. 20-CV-1942, 2021 WL 1020986 (N.D. Ill. Mar. 17, 2021). Under this approach, "a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the

products and alleged misrepresentations are substantially similar." *Bonahoom*, 2021 WL 1020986, at *3 (quoting *Carrol v. S.C. Johnsons & Son, Inc.*, No. 17 CV 05828, 2018 WL 1695421, at *4 (N.D. Ill. Mar. 29, 2018).

Rodriguez's allegations are sufficient to establish that the RSO Products and purported misrepresentations are substantially similar. He claims that the RSO Products are all produced in a similar manner and that Defendants uniformly market all the RSO Products as concentrates rather than CIPs. [36] ¶¶ 3, 10, 39–47, 104, 110, 158, 181. Defendants do not dispute these assertions. [39] at 4.

As such, Rodriguez has standing to pursue claims stemming from all of Defendants' RSO Products, including those he did not purchase. Defendants may, of course, still challenge whether Rodriguez is an appropriate class representative or argue that his class definition is too broad at the class certification stage.

## B. Failure to State a Claim

Defendants bring several arguments in support of dismissal for failure to state a claim. Some affect the entire Second Amended Complaint. Others target specific claims. The Court addresses each in turn.

### i. Mandated Warnings (All Counts)

Defendants first contend that Rodriguez's claims fail because there are no allegations in the Second Amended Complaint that Defendants failed to include required warning labels on the RSO Products. [39] at 8–9. This argument, however, is another way of attacking Rodriguez's failure to allege a duty to disclose for purposes of fraudulent concealment. The Court, therefore, will address this point below.

### ii.    Plausibility (All Counts)

Defendants additionally contend that Rodriguez does not plausibly allege a right to relief as the dangers associated with high-potency cannabis products are self-evident. [39] at 11–13. This argument is a bit difficult to follow, but as the Court understands it, it relates closely to whether Rodriguez has sufficiently alleged actual damages. The Court will, therefore, take it up below.

### iii.    Classification Dispute (All Counts)

Defendants next argue that the entire basis for Rodriguez's suit is legally erroneous because the RSO Products are not in fact CIPs under Illinois law but are properly classified as cannabis concentrates. [39] at 13–16. Therefore, Defendants maintain, there was never a misrepresentation. *Id*. Rodriguez disputes this and continues to maintain that the RSO Products are properly classified as CIPs. [41] at 8–10.

Though the parties each cite various Illinois statutes and definitions supporting their respective interpretations, neither party has cited any case law—state or federal—dealing with the classification of cannabis products under the CRTA. As such, it appears this is an issue of first impression involving a novel question of Illinois state law. As the Seventh Circuit has explained, "state courts are the ultimate expositors of their own laws." *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 863 (7th Cir. 2020) (citation omitted). It is imprudent for this Court to be the first to address this highly technical state law issue. While principles of federalism, of course, don't preclude this Court from doing so, they certainly caution against it.

Though recognizing that Rodriguez's case collapses if the RSO Products are, in fact, concentrates, the Court is not prepared to make a dispositive ruling on this novel issue of state law at stage in the case, especially where, as explained below, dismissal is warranted on other grounds. *McKenzie v. Progressive Treatment Sols., LLC*, No. 25 CV 1768, 2026 WL 636741, at *6 (N.D. Ill. Mar. 6, 2026) (doing the same based on similar CRTA allegations).

### iv.    Actual Damages (All Counts)

Defendants next posit that Rodriguez's claims fail because he has not alleged actual damages.[2] [39] at 20. Rodriguez contests this, arguing that he has pled damages in that he "'would not have purchased these RSO Products' had he known they were 'not safe, were misrepresented as a different product, did not have any appropriate safe dosing instructions.'" [41] at 16 (citing [36] ¶¶ 135, 191, 205, 220, 258). Rodriguez's theory of damages is also referred to an "overpayment" theory.

As a preliminary matter, the parties' briefing confuses the concepts of actual damages and Article III standing. These are analytically distinct. *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 673 (N.D. Ill. 2016) ("[T]he question of whether a plaintiff has standing to bring suit, and thus whether the court has jurisdiction to

---

[2]Counts I to V require a plaintiff to allege actual damages. *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 942 (N.D. Ill. 2023)(ICFA); *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 920 N.E.2d 1161, 1169 (2009) (fraud); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015) (express warranty); *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 725 (N.D. Ill. 2021) (implied warranty). Although loss is not an element of unjust enrichment (Count VI), an unjust enrichment plaintiff must show a detriment, which this Court will treat, for present purposes, as a functional equivalent of actual damages. *Lipton v. Chattem, Inc.*, No. 11 C 2952, 2012 WL 1192083, at *4 (N.D. Ill. Apr. 10, 2012) (doing the same).

hear the controversy, is separate from the question of whether a plaintiff has a cause of action, and that constitutional standing may exist even where a cause of action does not.") (citation omitted). So, while cases such as *Aqua Dots* may endorse Rodriguez's "overpayment" theory as a basis for Article III standing, *supra* § III.A.i, they do not automatically mean Rodriguez has alleged actual damages to support his causes of action.

A plaintiff is able, in some instances, to adequately plead actual damages based upon an "overpayment" type of theory.[3] *See Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1160 (N.D. Ill. 2022) (gathering cases recognizing that "numerous courts have permitted ICFA claims to proceed where, as here, a plaintiff claimed that defendant misled her as to the nature of the product she was buying, and she either paid more for the product than she otherwise would have or would not have purchased the product had she known the truth."). Common among those cases, however, were specific misrepresentations as to an ingredient or feature not present within the product itself and that could affect its value. *See, e.g., Rudy*, 583 583 F. Supp. 3d at 1556, 1160 (allowing an overpayment theory where an almond product was not, in fact, smoked over an open fire but was flavored using natural smoke flavor, despite being advertised as "smoked"); *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1079 1084 (N.D. Ill. 2018) (accepting plaintiff's overpayment theory

---

[3]The cases are cited by the parties to address actual damages in the context of ICFA claims. Whether the reasoning of those cases extends to Rodriguez's remaining claims is unclear. But because the parties treat the actual damages analysis the same across all counts, the Court will do the same.

where pita chips were labeled as "All Natural," but allegedly contained artificial ingredients); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 1149336, at *1–3 (N.D. Ill. Mar. 28, 2017) (allowing an overpayment theory where vitamins were advertised as "Made in the USA," but allegedly contained foreign-sourced ingredients); *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) (permitting an overpayment theory where a diaper product was not superior in odor control to its competitors, despite being advertised as such). Rodriguez's allegations are different. He does not allege any misrepresentations as to an ingredient or feature of the RSO Products he purchased (for instance, at no point does he say Defendants misstated the amount of THC in the RSO Products). Instead, his allegation is that Defendants improperly labeled and marketed the RSO Products he purchased as concentrates and that he would not have purchased the RSO Products had he known they were in fact CIPs.

Even assuming Rodriguez's version of the "overpayment" theory is cognizable under Illinois law, he has not sufficiently plead facts demonstrating that he paid "more than the actual value of the [product]." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). For instance, Rodriguez alleges he would not have bought the RSO Products he purchased if he had known they lacked the "appropriate warnings and information on the packaging and product" and "dosing instructions" required for CIPs under Illinois law. [36] ¶ 135. Yet Rodriguez fails to provide any facts connecting the absence of warning labels or dosing instructions to the value of the RSO Products he purchased.

15

Rodriguez then contends in a conclusory fashion that Defendants' RSO Products are substantially less valuable or worthless simply due to non-compliance with alleged CIP "safety standards" set forth in the CRTA. *Id.* ¶¶ 135, 137. But he provides no facts connecting Defendants' alleged CRTA noncompliance to a reduction in the value of the RSO Products he purchased, especially where, as Defendants aptly point out, the risks of consuming any cannabis product are well known and Rodriguez was aware that he was purchasing 0.5-gram syringes of RSO. And even if the Court were to construe Rodriguez's diminished-value allegations as rooted in some type of fear of criminal prosecution, his pleaded facts undermine that reading. As an Illinois resident, [36] ¶ 17, the individual cannabis products he purchased—0.5-gram cannabis syringes—were not illegal to possess, even if classified as CIPs. 410 ILCS 705/10-10(2) (allowing "no more than 500 milligrams of THC" for CIPs for Illinois residents).

What Rodriguez pleads, giving him every benefit, is a subjective assessment that, too him, a 0.5-gram RSO syringe labeled as a CIP is worth less than the same exact 0.5-gram RSO syringe when labelled as a concentrate. This subjective belief does not suffice to show that "*actual* pecuniary loss" occurred.[4] *Kim*, 598 F.3d at 365 (citing

---

[4]The Court notes the tension between finding, on one hand, that Rodriguez alleges an Article III injury but finding, on the other hand, that he alleges no actual damages for purposes of his causes of action. But this is a legal possibility, *Spector*, 178 F. Supp. 3d at 673. And upon the Court's review, Seventh Circuit precedent does not foreclose such a finding. The Court, moreover, is cognizant that at the motion to dismiss stage, it must accept Rodriguez's allegations that he would not have purchased the RSO Products had he known they were CIPs as true. Without the benefit of discovery, the Court cannot second guess this "individual" and "particularized" harm that he alleges. *Spokeo*, 578 U.S. at 339.

*Mulligan v. QVC, Inc.*, 382 Ill.App.3d 620, 888 N.E.2d 1190, 1197 (2008)) (emphasis added).

In short, without any "facts to support his conclusory assertions of actual damage, [Rodriguez] has not sufficiently pleaded that he paid more than the actual value of the merchandise he received." *Camasta*, 761 F.3d at 740. *See also Rodriguez v. Cresco Labs, Inc.,* No. 25 C 633, 2025 WL 3215872, at *3 (N.D. Ill. Nov. 18, 2025) (finding allegations that a plaintiff "would not have purchased [a cannabis] product had he known that it was not legal" insufficient to support actual damages); *Sabo v. Wellpet, LLC*, 250 F. Supp. 3d 332, 337 (N.D. Ill. 2017) (finding allegations that a plaintiff "paid more for the products than they were actually worth," "without any factual foundation to moor his subjective estimation of the products' worth" were "too speculative to support an inference of actual damages.").

As Rodriguez has failed to allege actual damages, his Second Amended Complaint must be dismissed.

### v. No Private Right of Action (All Counts)

Defendants additionally contend that the CRTA does not have a private right of action and therefore Rodriguez's claims must fail. [39] at 19. But Rodriguez does not claim a private right of action under the CRTA in his Second Amended Complaint. He instead uses Defendants' alleged misrepresentations about CRTA compliance as the basis for his claims. Defendants present no binding authority establishing that this is improper. And in fact, the authority cited by Rodriguez supports his approach. *See e.g.*, *Gainer Bank, N.A. v. Jenkins*, 284 Ill. App. 3d 500, 672 N.E.2d 317, 318–19

(1996) ("Plaintiff first contends that the Act is inapplicable because it does not create a private right of action. Because defendant is not suing under the Act, but invokes it merely to prove violations of the [ICFA] … plaintiff's argument fails.") (citations omitted); *Ornelas v. Safeway Ins. Co.*, No. 88 C 3583, 1988 WL 102232, at *1 (N.D. Ill. Sept. 26, 1988) (holding that a plaintiff may predicate an ICFA claim on a defendant's violation of an Illinois Department of Insurance regulation, which itself did not have a private right of action); *Partlow v. Johnson*, No. 3:18-CV-01441-DGW, 2018 WL 5312335, at *5 (S.D. Ill. Oct. 26, 2018) (recognizing claims for fraudulent misrepresentation and concealment where the underlying conduct was alleged misrepresentations made with respect to the Illinois Unemployment Insurance Act, which has no private right of action).

As such, the Court is not persuaded that the lack of a private right of action in the CRTA automatic bars Rodriguez's claims.

### vi.   Group Pleading (All Counts)

Defendants next argue that Rodriguez's Second Amended Complaint should be dismissed because he has engaged in improper "group pleading." [39] at 19–20. Specifically, Defendants maintain that Rodriguez's allegations improperly lump all Defendants together without any attempt to describe the specific fraud committed by any particular Defendant, thereby violating Rule 9(b)'s heightened requirement of specificity. *Id.*

The Court is unpersuaded by this argument. As an initial matter, only Counts I, II, and III are subject to Rule 9(b). Counts IV, V, and VI are governed by Rule 8(a).

But even for Counts I, II, and III, "a plaintiff need not individualize the role of multiple defendants when the necessary information is 'uniquely within the defendant's knowledge.'" *United States ex rel. Derrick v. Roche Diagnostics Corp.*, 318 F. Supp. 3d 1106, 1114 (N.D. Ill. 2018) (quoting *Levine v. Prudential Bache Properties, Inc.*, 855 F.Supp. 924, 930 (N.D. Ill. 1994)). So long as the "allegations are sufficient to 'inform each defendant of the nature of his alleged participation in the fraud,'" they withstand Rule 9(b) scrutiny. *Id.* (quoting *Clay Fin. LLC v. Mandell,* No. 16 C 11571, 2017 WL 3581142, at *7 (N.D. Ill. Aug. 18, 2017)).

The crux of Rodriguez's position for why group pleading is necessary here is that "[d]ue to the federal illegality of cannabis and robust regulatory schemes that vary from State to State, the cannabis industry maintains unique organizational designs." [36] ¶ 22. As a result, "many cannabis companies may maintain separate entities" "on paper," but ultimately function as "one entity operating under a large umbrella of entities." *Id.* ¶¶ 26, 27. Rodriguez alleges that Defendants are such an entity, as they "share executive management and c-suite executives, policies and practices, payroll, internal support functions, and other resources," "operate as a single, centralized entity through PTS' parent companies," and "hold themselves out as one integrated system and operate as such." *Id.* ¶¶ 30–32.

Given Rodriguez's specific allegations of Defendants' intertwined corporate structures, it remains at least plausible that each Defendant was involved in the alleged misconduct. True, discovery might later reveal that some of the alleged misconduct was, in fact, promulgated by only one or two of the Defendants. But at

this stage, that information is "uniquely within the defendant's knowledge" and therefore does not need to be plead with any specificity. *Roche Diagnostics*, 318 F. Supp. 3d at 1114.

In sum, based on Rodriguez's specific allegations as to the unique operating structure of the Defendant entities, the Court finds it permissible to utilize group pleading at this stage in the case. The Court, therefore, declines to dismiss the Second Amended Complaint on this basis.

### vii.   Failure to Allege a Misrepresentation (Counts I, II, & III)

As to the fraud claims (Counts I, II, and III), Defendants argue that Rodriguez has failed to allege he was "'actually deceived' by any statement because no statement is identified by [him]." [39] at 9–11. This is really two separate arguments. The first is that Rodriguez has not sufficiently alleged a misrepresentation. The second is that he has not alleged any reliance on that misrepresentation.

Claims for common law fraud (Count II) require an affirmative misrepresentation. *Kelly v. Sears Roebuck & Co.,* 308 Ill. App. 3d 633, 720 N.E.2d 683, 692 (1999). ICFA[5] (Count I) and fraudulent concealment (Count III) claims, however, do not, as both are actionable based on material omissions. *Heider v. Leewards Creative Crafts, Inc.*, 245 Ill. App. 3d 258, 613 N.E.2d 805, 814 (1993) ("Illinois law supports the notion that

---

[5]Rodriguez brings his ICFA claim under two theories: one alleging deceptive conduct and the other alleging unfair practices. [36] ¶¶ 176–193. As unfair practice claims under the ICFA do not involve fraud, *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008), Defendants' argument here and as to a mistake of law are irrelevant to that theory.

fraudulent concealment may be found in the absence of an affirmative misrepresentation."); *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 856 N.E.2d 542, 547 (2006) ("An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud."). Reliance, moreover, is only an element of common law fraud and fraudulent concealment. *Zeikos Inc. v. Walgreen Co.*, No. 23 C 303, 2023 WL 8281523, at *5 (N.D. Ill. Nov. 30, 2023) (common law fraud); *Gvozden v. Mill Run Tours, Inc.,* No. 10-CV-04595, 2015 WL 4656663, at *13 (N.D. Ill. Aug. 5, 2015) (fraudulent concealment). Reliance is not a required element for an ICFA claim. *Sears Roebuck,* 720 N.E.2d at 690 ("Reliance on the part of the plaintiff is not an element of the Illinois Consumer Fraud Act"). Defendants' arguments here, therefore, are only applicable to Count II.

Turning first to the lack of misrepresentations, a careful reading of Rodriguez's Second Amended Complaint reveals that he actually alleges two different theories of common law fraud. The first is that Defendants misrepresented their RSO Products as "safe," "legal," and "compliant." [36] ¶ 175 (alleging that Defendants "marketed [the RSO Products] as being compliant … lawful … and not unnecessarily dangerous."); ¶ 195 ("Defendants made continuous representations … that their RSO Products were cannabis concentrates that were safe to consume in the manner marketed."); *see also id*. ¶¶ 123, 124, 132, 205. The second is that Defendants misrepresented the RSO Products' regulatory classification—specifically, representing the RSO Products as concentrates, not CIPs—where the

misclassification ultimately rendered the RSO Products non-compliant with statutory safety limits. *Id.* ¶¶ 13, 16, 97.

The difference is subtle, but important. The first theory requires identifying a false statement about safety or legality. Rodriguez identifies none: he points to no label or advertisement which Defendants represented that the RSO Products were "safe," "legal," or "compliant." The second theory, however, only requires identifying a false statement about classification. Here, Rodriguez does point to specific advertisements in which Defendants listed their RSO Products as "concentrates" and "extracts" rather than CIPs. *Id.* ¶¶ 85, 86, 91.

Nevertheless, Rodriguez's common law fraud claim still fails for lack of reliance. Specifically, Rodriguez fails to allege with particularity that he viewed those advertisements before making his purchases. His broad allegations of reliance, [36] ¶¶ 121–127, 132, 133, that don't specifically identify the advertisement(s) that he viewed do not count. *Roppo v. Travelers Companies*, 100 F. Supp. 3d 636, 644 (N.D. Ill. 2015) (dismissing a complaint "which merely state[d] that [plaintiff] 'relied upon' Defendants' misrepresentations."). And though Rodriguez specifically claims that he relied on Defendants' label information when making his purchase, the label Rodriguez allegedly reviewed contains no misrepresentations: there is nothing about the RSO Product being a cannabis concentrate on the label (let alone "safe," "legal" or "compliant."). [36] ¶ 93.

To recap, Rodriguez sufficiently identifies an affirmative misrepresentation under his second theory of common law fraud but fails to adequately plead any reliance on that misrepresentation. For this additional reason, Count II must be dismissed.

### viii.  Mistake of Law (Counts I, II, & III)

Defendants additionally contend that Rodriguez's fraud claims fail because Rodriguez alleges a mistake of law, not fact. [39] at 16. In Illinois, "misrepresentations or mistakes of law cannot form the basis of a claim for fraud" because "all persons are presumed to know the law." *McIntosh v. Walgreens Boots All., Inc.*, 2019 IL 123626, 135 N.E.3d 73, 84; *see also Kupper v. Powers*, 2017 IL App (3d) 160141, 71 N.E.3d 347, 354–55 ("As a general rule, one is not entitled to rely upon a representation of law because both parties are presumed to be equally capable of knowing and interpreting the law.") (citation omitted); *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 791 N.E.2d 553, 558 (2003) ("Generally, a deceptive representation or omission of law does not constitute a violation of the Consumer Fraud Act."). In determining whether a misrepresentation is one of fact or law, the "key question" is whether "the defendant misrepresents or omits facts of which he possesses almost exclusive knowledge the truth or falsity of which is not readily ascertainable by the plaintiff." *Kupper,* 71 N.E.3d at 355. Put differently, "[w]here a misrepresentation of law is discoverable by the plaintiff in the exercise of ordinary prudence, it cannot form the basis of an action for fraud." *McIntosh*, 135 N.E.3d at 84–85.

23

Rodriguez alleges a mistake of law. He asserts that the RSO Products he purchased were CIPs and yet were improperly marketed as cannabis concentrates by Defendants. [36] ¶¶ 10, 120, 128. But whether a cannabis product is properly classified as a cannabis concentrate or a CIP is statutory. As Rodriguez is charged with knowledge of the law, he cannot claim to have been deceived by Defendants' classification of their RSO Products as cannabis concentrates. Rodriguez could have read the CRTA to determine if the classification was proper. He cannot now allege fraudulent conduct by Defendants based on his failure to do so. *Cresco Labs,* 2025 WL 3215872, at *5 (finding the same based on nearly identical allegations).

Resisting this conclusion, Rodriguez contends that Defendants' alleged misrepresentations constituted mistakes of fact, not law, because "Defendants' intent … are what govern the categorization of the product" and "evidence of Defendants' intended use of RSO Products … [is] solely in Defendants' possession." [41] at 11. The Court is puzzled by Rodriguez's argument. Certainly, the definitions of cannabis concentrate and CIPs in the CRTA appear to depend on some type of "intent." 410 ILCS 705/1-10. Whose intent is unclear. Rodriguez's position, though, is that it is the intent of Defendants which matters. But if so, his Second Amended Complaint reveals that he knows what that intent is. Indeed, Rodriguez repeatedly acknowledges that Defendants marketed the RSO Products with the intent that they be consumed by eating, and then applies that understanding to argue that they are CIPs. [36] ¶ 39 ("Defendants' RSO, which is produced using alcohol extraction, is intended to be eaten – they are not intended to be smoked."); ¶ 124 (alleging reliance on marketing

portraying the RSO Products as "safe to consume, safe to use in the manner marketed—eating"); ¶ 197 ("Defendants' RSO Products are CIPs that contain dangerous amounts of THC and are unsafe to consume in the manner advertised, by eating."); *see also id.* ¶¶ 127, 224, 241, 263. In other words, Rodriguez's own pleading supplies the very fact—Defendants' intent—that he claims was hidden from him. "How, then, can [Rodriguez] say that he could not discover the facts which determine the [RSO] Product's classification?" *McKenzie*, 2026 WL 636741, at *7 (rejecting a nearly identical argument based on similar allegations made with respect to intent under the CRTA). He cannot.

In sum, Rodriguez's pleading implicates a mistake of law, not a mistake of fact. For this additional reason, Counts I, II, and III must be dismissed.[6]

### ix.    No Duty to Disclose (Count III)

As to Count III only, Defendants assert that Rodriguez has failed to allege that Defendants had a "duty to disclose." [39] at 21. To state a claim for fraudulent concealment in Illinois, a plaintiff must allege that "the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 675 N.E.2d 584, 593 (1996). A duty to disclose can arise where "[a] party [is] subject to a statutory duty to disclose certain facts." *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 IL App (2d) 140952, 40 N.E.3d 264, 275. It can also arise "where plaintiff places trust and confidence in defendant,

---

[6] In light of this finding, the Court declines to address Defendants' safe harbor and economic loss arguments. [39] at 16–19.

thereby placing defendant in a position of influence and superiority over plaintiff." *Connick*, 675 N.E.2d at 593. The standard for identifying a special trust relationship, however, is "extremely similar to that of a fiduciary relationship." *Wigod*, 673 F.3d at 571 (quoting *Benson v. Stafford*, 407 Ill.App.3d 902, 941 N.E.2d 386, 403 (2010)). Accordingly, "state and federal courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one." *Id.* (collecting cases). "In short, the defendant accused of fraudulent concealment must exercise 'overwhelming influence' over the plaintiff." *Id.* at 572 (citation omitted).

Rodriguez identifies two duties. The first is that based on Defendants' "superior and exclusive knowledge about the true safety, quality, and proper use of their own RSO Products" they were in "a position where their customers placed their trust and confidence in Defendants to honestly represent the safety, quality, and proper use of their RSO Products … thus placing a duty on Defendants to disclose the truth about their RSO Products." [36] ¶ 212. Yet these allegations do not suggest a special trust relationship between Defendants and Rodriguez. They merely allege a buyer-manufacturer relationship. True, Defendants may possess more information than Rodriguez about the RSO Products. But to say that Defendants had "exclusive" knowledge of the alleged defects in the RSO Product is belied by Rodriguez's own allegations, which documents how the RSO Products are to be used and then applies that understanding to argue why they are unsafe CIPs. *See e.g.*, [36] ¶¶ 47, 124, 127, 197, 224, 241, 263. Mere allegations that a manufacturer had more knowledge of a product than a purchaser is simply not enough to rise to the level of "overwhelming

influence" so as to confer a duty to disclose. *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1058 (N.D. Ill. 2022) ("To be sure, Ford had more knowledge than Rodriguez as to the functionality of its vehicles and their parts. But the fact that Ford had more information than Rodriguez does not show an overwhelming influence.").

Rodriguez alternatively alleges that, under 410 ILCS 705/55-21, Defendants were subject to a statutory duty to disclose. [36] ¶¶ 64, 68, 69, 166, 186. 410 ILCS 705/55-21 contains a variety of disclosure requirements for cannabis packages and labels, including specific warnings that must be present on CIPs. But as Defendants correctly point out, Rodriguez's allegations reveal that Defendants' RSO Products, if CIPs, were compliant with 410 ILCS 705/55-21. The packaging of the RSO Products contains the required disclosures for CIPs. Compare [36] ¶ 93 with 410 ILCS 705/55-21(j). Even Rodriguez concedes this. [36] ¶ 182. Rodriguez identifies no statutory duty obligating Defendants to disclose anything for CIPs beyond what 410 ILCS 705/55-21 requires. In other words, having satisfied the requirements of 410 ILCS 705/55-21, Defendants cannot be said to have "concealed a material fact" they were "under a duty" to reveal. *Connick*, 675 N.E.2d at 593.

In sum, Rodriguez has not identified a duty to disclose for the purposes of his fraudulent concealment claim. For this additional reason, Count III must be dismissed.

### x.    Lack of Privity (Counts IV and V)

As to Rodriguez's warranty claims (Counts IV and V), Defendants argue[7] that Rodriguez has failed to allege any "privity of contract." [39] at 21. In Illinois, express and implied warranty claims require privity of contract between the plaintiff and the defendant. *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1125 (N.D. Ill. 2019). "There is no contractual privity between a manufacturer and a person who buys from an independent dealer." *Ford Motor*, 596 F. Supp. 3d at 1056.

Rodriguez's allegations indicate a lack of privity with Defendants. He purchased the RSO products from Ascend dispensary, not Defendants. [36] ¶¶ 117–119. Rodriguez does not dispute this. [41] at 19–21. He instead maintains that the "direct dealing" and "third-party beneficiary" exceptions apply.

The "direct dealing" exception to privity "applies when there are direct dealings between the manufacturer and the remote customer." *Ford Motor*, 596 F. Supp. 3d at 1056 (quoting *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 705 (N.D. Ill. 2016). Here, Rodriguez does not allege any direct communications Defendants made to him about their cannabis products. He instead points to Defendants' publicly available marketing materials, advertisements, and product labels—none targeted to him individually—maintaining that these suffice as "direct dealings." [41] at 20–21. Courts in this district are split on whether generalized advertisements directed to the public at large are sufficient to establish privity under Illinois law. Compare *Miller v. Emerson Electric Co.*, No. 1:23-CV-03797, 2025 WL 964905, at *5 (N.D. Ill. Mar.

---

[7]Defendants also argue that Count IV should be dismissed for failure to identify an express warranty. [39] at 22. As it is dispositive, the Court focuses its discussion on privity.

31, 2025); *Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 976 (N.D. Ill. 2025) (generalized advertising insufficient) with *Elward*, 214 F. Supp. 3d at 705; *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 805 (N.D. Ill. 2013) (generalized advertising sufficient). As the parties have not provided any binding authority on this question (nor has the Court found any), the Court must predict how the Illinois Supreme Court would decide the issue. *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015). Given that the origins of the exception stem from a case where a buyer's employees met with a manufacturer to discuss product specifications, *Manley*, 417 F. Supp. 3d at 1123, and "the narrow purview of [the] exception under Illinois law," *Emerson Electric*, 2025 WL 964905, at *5, the Court is not persuaded that the Illinois Supreme Court would conclude that mass-market advertisements alone create privity between a customer and a manufacturer. Holding otherwise would be a significant expansion of the exception, which the Court is not prepared to do. *King v. Damiron Corp.,* 113 F.3d 93, 97 (7th Cir. 1997) ("federal courts sitting in diversity ought to be circumspect in expanding the law of a state beyond the boundaries established in the jurisprudence of the state.") (citation omitted). Accordingly, because Rodriguez identifies only "ordinary general communications between manufacturers and consumers, not specific, direct communications with [Rodriguez] when [he] made the purchase," *Emerson Electric*, 2025 WL 964905, at *5, the "direct dealing" exception does not apply.

The "third-party beneficiary" exception is also inapplicable. That exception applies only where "the manufacturer knew the identity, purpose and requirements of the

customer and manufactured or delivered the goods specifically to meet those requirements." *Gurrola*, 774 F. Supp. 3d at 977 (cleaned up). Rodriguez makes no allegations that Defendants knew his identity, his purpose, or his particular requirements.

To be sure, the Court acknowledges Rodriguez's point that the privity inquiry is often "fact-intensive" and thus cannot be resolved at the motion to dismiss stage. [41] at 20. While that may be true in other cases, this is not one of them. Any direct dealings between Defendants and Rodriguez would necessarily be in Rodriguez's possession or knowledge. If Rodriguez cannot identify these dealings at the pleading stage, is it unclear how discovery would change this. And even assuming Defendants' knowledge of Rodriguez's identity, purpose and requirements are not in Rodriguez's possession, the Second Amended Complaint is entirely devoid of allegations that would permit a reasonable inference that Defendants ever made a customized-cannabis product to meet Rodriguez's specific needs.

For these additional reasons, Counts IV and V must be dismissed.

### xi.    Dependency on Other Failed Claims (Count VI)

Lastly, as to Rodriguez's unjust enrichment claim (Count VI), Defendants assert that the claim must be dismissed as it is dependent on Rodriguez's other failed claims. [39] at 22. In Illinois, "[i]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and [] will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Rodriguez concedes that his unjust

enrichment claim relies in the same "overlapping deceptive conduct by Defendants as those in other claims." [41] at 18. As the Court has dismissed Rodriguez's other claims, his claim for unjust enrichment also fails.[8] *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (dismissing plaintiff's claim for unjust enrichment where the underlying ICFA claim was dismissed); *Tyler v. Bank of New York Mellon*, No. 19 CV 7863, 2020 WL 2735367, at *10 (N.D. Ill. May 26, 2020) (same).

## IV.    Conclusion

For the stated reasons, Defendants' Motion to Dismiss [39] is granted. The Second Amended Complaint is dismissed without prejudice. The Court will allow Rodriguez to file an amended complaint if he can cure the deficiencies as discussed in this order. Rodriguez should file a Third Amended Complaint on or before April 15, 2026. The Clerk is directed to add Defendant NMI Management Group, LLC to the case caption in CM/ECF.

E N T E R :

Dated: March 13, 2026

_____
MARY M. ROWLAND
United States District Judge

---

[8]As the Court dismisses Count VI on these grounds, the Court declines to address Defendants' other arguments related to Rodriguez's unjust enrichment claim.